Lawrence REIN and Carol Rein,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 79 C 989.

United States District Court,
E. D. New York.

Jan. 8, 1982.

Paul D. Rheingold, P. C., New York City, for plaintiffs.

Edward R. Korman, U. S. Atty., E. D. N. Y. by Robert L. Begleiter, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

Plaintiffs brought this action to recover for injuries claimed to have been caused by a Swine Flu vaccine administered to plaintiff Lawrence Rein on December 14, 1976, as part of the National Swine Flu Immunization Program. Jurisdiction is not disputed. 28 U.S.C. § 1346(b) and 42 U.S.C. § 247b.

Upon the consent of the parties the court ordered that the issue of causation be tried separately. To that end, evidence was presented to the court sitting without a jury on December 21, 1981. For the plaintiff two witnesses testified, plaintiff Lawrence Rein and one of his treating doctors, Matthew Greenberg. Defendant presented no live witnesses. Testimony of defendant's expert medical witness, Dr. Thomas G. Kantor had been written out in advance of trial; since plaintiff did not wish to cross-examine Dr. Kantor, he was not called to court to testify, and his testimony was submitted in writing. In addition, defendant submitted the deposition of Dr. Joseph D. Schattner, one of plaintiff's treating physicians, as well as portions of depositions taken as part of the proceedings before Hon. Gerhard A. Gesell while the case was in the multidistrict litigation stage. The portions of the depositions submitted by defendant in that connection are listed in the pretrial order and they include excerpts from the depositions of doctors Davenport, Henderson, Marine, Meiklejohn, Nathanson, Retailliau, Salk, Schoenbaum and Stuart-Harris.

The court has considered carefully the live testimony, the deposition testimony, the exhibits submitted and the arguments of counsel. This memorandum constitutes the court's decision and includes the court's findings and conclusions pursuant to FRCP 52(a).

It is undisputed that plaintiff received a Swine Flu shot on December 14, 1976. He claims that there was an immediate reaction of swelling, redness and pain in the right arm which later extended to the right leg, causing him to spend three weeks in bed and away from work. Gradually, over succeeding months and years, the pain has diminished and has now virtually stopped except for an occasional flare-up. He

claims that the symptoms were caused by the Swine Flu vaccine.

Defendant acknowledges that plaintiff did develop some condition after the shot, but claimed that it was minor in its symptoms and that its connection with the administration of the vaccine was only temporal and coincidental. Defendant argues that plaintiff has failed to satisfy his burden of proving a causal relationship between the vaccine and his symptoms.

Plaintiff begins with a high degree of statistical improbability weighing against his contention. A reaction of the type claimed is virtually unknown in the medical literature and by the experts whose opinions have been brought to the court's attention. Statistics, of course, are not decisive on issues of individual causation. They do, however, help place the issue in perspective. In addition, they focus the court's attention in this case upon the credibility of the plaintiff and the reliability of his reports of the particular symptoms claimed to have been suffered shortly after the vaccine was administered.

Plaintiff testified that before the innoculation he had never missed time from work, was in good health except for minor colds and a heart murmur that he had had for years, that he had no medical problems until the vaccine, and that, in particular, he had suffered from no muscle or nerve problems. He further testified that on the day following administration of the vaccine he experienced "excruciating pain" of a shooting variety in his right arm, that he could not raise his right arm without such pain, and that the pain continued for some three weeks during which time he remained home from work. He testified that he went to the emergency room of Mount Sinai Hospital, but they would not treat him and, instead, referred him to his own physician, Dr. Greenberg.

Rein testified that his pain was focused primarily in his right arm and right side, and that, in addition, his right leg was numb, but with a feeling that was unlike the pain in his arm. The pain tapered off after three weeks but he testified that the numbness persisted. More recently, changes in weather tend to precipitate further episodes of pain.

On cross-examination Rein testified that he had experienced no muscle problems and no migrane headache problems. He also testified that his wife had taken his temperature when his pain symptoms appeared, and that he had told Dr. Greenberg and Dr. Schattner that he had suffered from fever. He acknowledged that he could now do everything by way of activities that he could before the shot.

Dr. Matthew Greenberg, plaintiff's treating physician, in part corroborated, but in part undercut plaintiff's testimony. On direct examination he testified that he had seen plaintiff on December 27, 1976, 13 days after the shot. At that time, plaintiff complained of pains in his arms and legs, particularly joint pains which seemed to be focused on the elbows, wrists, and foot. Dr. Greenberg saw no signs of swelling or redness, although he did find tenderness and limited motion. In his opinion, there was a "very likely probability" that the symptoms experienced by Rein were caused by the Swine Flu vaccine. Dr. Greenberg based his opinion on the facts that there was a temporal relationship, that Rein had had no prior joint pains, that he had had one other patient with an almost identical problem involving ankle swelling after a Swine Flu vaccination, and the fact that immune, complex reactions frequently follow administration of protein vaccines.

Dr. Greenberg's testimony on cross-examination, however, contradicted in part the picture given that far in the trial of virtually problem-free health for Rein. From 1966 to 1976 Dr. Greenberg frequently treated Rein for a variety of problems including multiple treatments for upper respiratory infections, but also for back pain and headaches which may have been related to an automobile accident in 1968, muscle spasms in 1970, lost vision in one eye in 1971, neuritis and a numbness in the face, right arm and right leg in 1972, shortness of breath in 1973, and muscle spasms with neck and right shoulder pain in 1975. Among the

foregoing, of particular significance are the complaints by Rein of numbness in his face, right arm and right leg in 1972, and the muscle spasms with neck and right shoulder pain in 1975. Those incidents flatly contradict Rein's own testimony that he had had no muscle problems prior to the Swine Flu vaccine.

It further appeared from Dr. Greenberg's testimony that on December 20th, four days after the vaccine was administered, and three days after Rein testified that he had experienced excruciating pain so severe that he could not raise his arm, Dr. Greenberg had a visit from Rein in which he examined and treated him for an upper respiratory infection, but made no note whatsoever of any complaint about arm pains. If plaintiff experienced on December 15 the pain that he described at trial, it is inconceivable that he would not have mentioned it to Dr. Greenberg on December 20th. Since he failed to mention the pain, the court finds that he had not yet experienced it.

On January 3, 1977, a week after Dr. Greenberg's examination of Rein for the joint pains, he again treated him for the upper respiratory infection, but made no note whatsoever about joint or muscle pains. A month later, on February 3, 1977, Dr. Greenberg further treated Rein for upper respiratory infection and noted no complaints of pain with respect to the wrists or elbows. At no time did Dr. Greenberg notice any swelling or redness on any part of Rein's body. Dr. Greenberg's preliminary diagnosis was arthritis, although he could not determine the precise type. He was satisfied that it was not rheumatoid arthritis or osteoarthritis, and he was also satisfied that it was not gout. In June of 1977, Rein complained of tenderness in the wrists, elbows and of foot pain. This is the first occasion that Dr. Greenberg noted such complaints after December 27, 1976. In November, 1977, Rein complained of pain in his right forearm and right leg, and Dr. Greenberg noted some swelling of the ankle. This was the first swelling that he had seen in Rein.

The deposition testimony of Dr. Joseph D. Schattner shows that in August, 1976, a few months before administration of the Swine Flu vaccine, Rein had complained to him of an occasional swelling of his right leg at the end of the day. Schattner was unable to identify a cause for the swelling, but he did notice that Rein suffered from a reddish rash whose location he did not note. Rein visited Dr. Schattner on January 5, 1977 complaining of shortness of breath, coughing, and a slight tightness in his chest. He reported to Dr. Schattner that after his Swine Flu shot he had experienced chills, but no temperature, and had also suffered from painful joints and muscles. On January 5, 1977 he did not complain to Dr. Schattner of joint or muscle pains. Dr. Schattner testified that in his experience muscle pains following flu vaccines are very common, but that he did not find severe joint pain, after such a vaccine, to be a problem. The kinds of pains complained of, in his experience, usually last from one to several days and go away.

Dr. Schattner found no evidence that Rein had arthritis, and had no opinion as to whether or not a Swine Flu shot can cause arthritis. Under questioning by Rein's attorney, Dr. Schattner first testified that he could not state with a reasonable degree of medical certainty that Mr. Rein's arthralgia (joint pain without swelling) was directly caused by the Swine Flu vaccine. Dr. Schattner said that the vaccine can possibly cause arthralgias but that he had never heard of it. After considerable leading by plaintiff's attorney, Dr. Schattner seemed to say that it was probable that Rein's arthralgia was caused by the vaccine, because he had found no other cause for it.

The government's expert, Dr. Thomas G. Kantor, had examined Rein who reported to him that within a day or so after the flu shot, he had pain of fairly rapid onset in his entire right arm, followed shortly thereafter by a numbness in his right leg. Later plaintiff experienced a decreased range of motion of his right shoulder and continues to have episodes of weakness in his right leg as well as some numbness in his upper

right forearm and right calf. Dr. Kantor found a limitation of motion of about 10% in the right shoulder caused by pain. He also found a reduced grip on the right side and a slight sensory deficit in the upper right arm as well as slightly diminished deep tendon reflexes in his right arm and leg as compared to the left. Dr. Kantor's conclusions were that Rein did not have an arthritic problem, but did have some diminished right shoulder motion.

Rein had not reported to Kantor an automobile accident which he had suffered in 1978 which involved an injury to his neck. In Kantor's opinion, that injury could account for the right shoulder limitation.

To Dr. Kantor, Rein did not complain of aches and pains in the muscles and joints. Instead, he talked about generalized pain and numbness but did not specifically relate it to a particular muscle group. Dr. Kantor disagreed with Dr. Greenberg's conclusion that Rein began suffering from arthritis shortly after he received the flu shot.

As to the possibility of a delayed hypersensitivity reaction, which is a possibility from any injection, Dr. Kantor opined that this did not explain Rein's complaint, because such reactions do not continue for five years, and because plaintiff's condition was not accompanied by the usual features of the hypersensitivity reaction such as rash, fever, red blood cells in urine, and an increase in eosinophile cells in the blood. Furthermore, according to Dr. Kantor, a delayed hypersensitivity reaction does not begin to show symptoms in as short a period as a day or two, as complained of by Rein. Dr. Kantor's final opinion was that the aches and pains complained of by Rein following his innoculation were "in all probability not connected to the innoculation because Mr. Rein had no other symptoms of a hypersensitivity reaction to the innoculation."

The court finds and concludes that plaintiff has failed to meet his burden of establishing by a fair preponderance of the credible evidence that the symptoms he now complains of were caused by the Swine Flu vaccine. As indicated above, Mr. Rein's credibility is suspect. Having suffered an accident in 1978 with significant injuries to the left side of his body as well as his neck, he now testifies that his problems were with his right arm, side and leg. His complaints to Dr. Greenberg on December 27, 1976, however, were of pains in both the arms and the legs.

Rein greatly exaggerated at trial the severity of his pain. Were it as bad as he now says, there would have been some mention of it to Dr. Greenberg on December 20th and there would have been complaints of it to Dr. Schattner on January 5th, as well as on his later treatments of plaintiff.

The only connection that plaintiff has established between the vaccine and whatever complaints he may have had is a temporal one. Merely because a symptom follows an event is insufficient evidence of a causal connection. *Gicas v. U. S.,* 508 F.Supp. 217 (E.D.Wis.1981). Moreover, Dr. Greenberg placed the pains in the joints, apparently to bolster his diagnosis of arthritis. The great weight of authority, however, including Dr. Schattner, failed to support the conclusion that the Swine Flu vaccine causes arthritis.

Plaintiff's complaint of pain is further undercut by his own administrative claims for damage submitted to the government. Exhibit A, prepared by Rein himself and dated March 20, 1977 says that he "received Swine Flu shot December 14, 1976, December 16 around 5:00 p. m. felt my arms getting very heavy as if I was carrying weights * * * heaviness spread to legs." Nowhere did Rein mention the pain which now constitutes his major complaint. Even with his amended claim prepared by his attorney and dated October 6, 1978, the description of the "personal injury" is "I developed numbness and other signs of a peripheral neuropathy. I still have numbness today." Again, there was no mention of the pain.

The conflicts and inconsistencies among plaintiff's testimony, his claims submitted to the government, the findings of Dr. Greenberg and Dr. Schattner, the absence

of complaints to both Dr. Greenberg and Dr. Schattner, and the history that he gave to Dr. Kantor, all leave the court to conclude that plaintiff did not suffer from the excruciating pain which he now claims he experienced. The court further finds and concludes that plaintiff has failed to establish by a fair preponderance of the credible evidence that whatever symptoms of pain or numbness he did experience after the Swine Flu injection on December 14, 1976, were caused by the injection.

Since plaintiff has failed to establish the necessary causal connection, the complaint must be dismissed. The clerk is directed to enter judgment accordingly.

SO ORDERED.